JPL/SDD:MEB/TAD/CEJ/DKK
F. #2014R01506

**17 M 527**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

JOSEPH P. WILLNER,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF APPLICATION FOR
ARREST WARRANT

(18 U.S.C. §§ 371 and 1349)

EASTERN DISTRICT OF NEW YORK, SS:

          MATTHEW E. BITTERMAN, being duly sworn, deposes and states that he is

a Special Agent with the Federal Bureau of Investigation, duly appointed according to law

and acting as such.

Count One: Conspiracy to Commit Securities Fraud

          Upon information and belief, in or about and between September 2014 and

May 2017, both dates being approximate and inclusive, within the Eastern District of New

York and elsewhere, the defendant JOSEPH P. WILLNER, together with others, did

knowingly and intentionally conspire to execute a scheme and artifice (a) to defraud one or

more persons in connection with one or more securities of an issuer with a class of securities

registered under Section 12 of the Securities Exchange Act of 1934 and that is required to

file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit: the Targeted

Companies, as defined herein, and (b) to obtain money and property by means of materially

false and fraudulent pretenses, representations and promises in connection with the purchase

and sale of securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, and that were required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit: the Targeted Companies, as defined herein, contrary to Title 18, United States Code, Section 1348.

(Title 18, United States Code, Section 1349)

Count Two: Conspiracy to Commit Computer Fraud and Abuse

Upon information and belief, in or about and between September 2014 and May 2017, both dates being approximate and inclusive, within the Eastern District of New York, the Southern District of New York and elsewhere, the defendant JOSEPH P. WILLNER, together with others, did knowingly and intentionally conspire to commit offenses against the United States, to wit: knowingly and with intent to defraud, access one or more protected computers without authorization or exceed authorized access, and by means of such conduct further the intended fraud to obtain more than $5,000 during any one-year period, contrary to Title 18, United States Code, Section 1030(a)(4) and 1030(c)(3)(A).

(Title 18, United States Code, Section 371)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.       I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since September 2015.  I am currently assigned to a Corporate and Securities Fraud squad, where I investigate a range of crimes, including but not limited to:

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause for this Court to issue an arrest warrant, I have not described all the relevant facts and circumstances of which I am aware.

complex financial white-collar crimes, cybercrime, financial frauds, and other federal criminal acts. I successfully completed 21 weeks of New Agent Training at the FBI Academy in Quantico, Virginia. During that time, I received training in physical surveillance, legal statutes and procedures, financial investigations, money laundering techniques, cybercrime, confidential source management, and electronic surveillance techniques.

**Relevant Definitions and Economic Principles**

2. A "buy order" is an order to purchase a security.

3. A "sell order" is an order to sell a security.

4. A "short sale order" refers to a transaction where the seller agrees to sell a security that the seller does not presently own, and that the seller has borrowed, in order to complete the transaction. In a typical short sale transaction, the stock seller, who typically holds a cash "margin" account at a brokerage house as a security for stock to be borrowed and sold as part of the transaction, agrees to sell the borrowed stock at a specified price in the future. When a seller engages in short-selling, he or she is generally anticipating, or hedging against, a decline in the share price, enabling the stock to be bought back at a lower price to make a profit.

5. "Covering a short" refers to buying back borrowed securities to close an open short position. Covering a short involves purchasing the exact same security that one initially sold short. If a stock trader is able to cover a short sale at a price less than the short sale price, the stock seller will make money—specifically, the difference between the short sale price and the cover price. Conversely, if a stock trader covers a short sale at a price greater than the short sale price, the stock trader will lose money. For example, if a

stock trader sold short 100 shares of Stock X at $12 per share, and then the stock trader was able to purchase 100 shares of Stock X at $10 per share to cover the short, the stock trader would make $2 per share, or $200. Using the same example, if the price of Stock X increased to $14 per share instead of declining, and one covered the short by purchasing 100 shares of Stock X at $14, then the gross loss would be $200.

6. "Regular trading hours" and "regular trading days" refers to the time period from 9:30 a.m. to 4:00 p.m.[2] from Monday through Friday, excluding applicable holidays, during which most stock trading on major stock exchanges in the United States occurs. Major stock exchanges include the New York Stock Exchange (or "NYSE") and the Nasdaq Stock Market.

7. "Pre-market trading" refers to the period of trading activity that occurs before regular trading hours. The pre-market trading session typically spans from approximately 4:00 a.m. to 9:30 a.m. on regular trading days.

8. "After-hours trading" refers to the period of trading activity that occurs after regular trading hours. The after-hours trading session typically spans from 4:00 p.m. to 8:00 p.m. on regular trading days.

9. "Liquidity" generally describes the degree to which a security can be quickly bought or sold in the stock market and its related impact on price. In a market for a security with high liquidity (i.e., high trading volume), the price a buyer offers per share (the "bid price") and the price a seller is willing to accept (the "ask price") should be fairly close. In a market for a security with lower liquidity (i.e., a "thinly traded" security), however, the

---

[2] Unless otherwise noted, all times referenced herein are in Eastern Time.

spread between the bid and ask price generally widens. In general, due to lower trading volume, liquidity is significantly lower during pre-market and after-hours trading.

10. "Micro-cap" stocks refers to stocks of publicly traded companies with a market capitalization of between $50 million and $300 million.

11. "Small-cap" stocks refer to stocks of publicly traded companies with a relatively small market capitalization. A small-cap company is generally a company with a market capitalization of between $300 million and $2 billion. In some instances, micro-cap and small-cap stocks can be subject to price manipulation because many of them are thinly traded. When large blocks of micro-cap or small-cap stock are controlled by a small group of individuals, it can enable those groups to control or orchestrate manipulative trading in those stocks, including controlling the stock price, and creating the false appearance that there is genuine market interest in the stock or stocks.

12. An Internet Protocol ("IP") address is a numerical identifier assigned to each device (e.g., computer, router, mobile device) participating in a computer network that uses the Internet Protocol for communication. IP addresses are usually written and displayed in human-readable notations, e.g., 123.45.678.9. An IP address serves two principal functions: host or network interface identification and location addressing. Because every device that connects to the internet uses an IP address, IP address information can identify computers and other devices that accessed the internet.

13. A "user agent string" ("UA") is a "string," or line of text, that a user's particular web browser (e.g., Safari, Mozilla, Google Chrome) sends to every website to which the user connects. The UA contains information about the web browser and the device's operating system and allows each website the user visits to customize content based

on the capabilities of the user's web browser and device operating system. An example of a

UA is: Mozilla/5.0 (Windows NT 6.1; WOW64; rv:12.0) Gecko/20100101 Firefox/12.0.

This UA shows that the browser is consistent with Mozilla, version 5.0; the operating system

is Windows 7 (code name Windows NT 6.1); the version of Windows is 64-bits (WOW64);

and the actual browser is Firefox 12.

14.     A media access control ("MAC") address is a unique identification

number assigned to a network interface such as a wireless or ethernet card attached to a

computer.

**The Defendant and the Targeted Companies**

15.     JOSEPH P. WILLNER ("WILLNER") is a United States citizen living

in Ambler, Pennsylvania, who identified himself to at least one brokerage firm as a day

trader.

16.     The Targeted Companies included the following the companies, each

of which is an issuer with a class of securities registered under Section 12 of the Securities

Exchange Act of 1934, or that is required to file reports under Section 15(d) of the Securities

Exchange Act of 1934: American Independence Corp. ("AMIC"); American River

Bankshares ("AMRB"); Aqua Metals Inc. ("AQMS"); Auris Medical Holding AG

("EARS"); Camden National Corp. ("CAC"); Canterbury Park Holding Corporation

("CPHC"); CBIZ, Inc. ("CBZ"); China Telecom Corporation Ltd. ("CHA"); Coastway

Bancorp ("CWAY"); Community West Bancshares ("CWBC"); Delhaize Group SA

("DEG"); Dover Saddlery Inc. ("DOVR"); Employers Holdings, Inc. ("EIG"); Federated

Investors Inc. ("FII"); First Community Corporation ("FCCO"); First of Long Island Corp.

("FLIC"); Harvest Capital Credit Corp. ("HCAP"); Hawaiian Telecom HoldCo Inc.

("HCOM"); Highway Holdings Limited ("HIHO"); INTL FCStone, Inc. 8.5% Senior Notes

Due 2020 ("INTLL"); Johnson Outdoors Inc. ("JOUT"); J.W. Mays Inc. ("MAYS"); Key

Technology, Inc. ("KTEC"); Kingstone Companies Inc. ("KINS"); Lawson Products Inc.

("LAWS"); Mack Cali Realty Corp. ("CLI"); MMA Capital Management LLC ("MMAC");

Molina Healthcare, Inc. ("MOH"); MRC Global Inc. ("MRC"); New Hampshire Thrift

Bancshares ("NHTB"); New Home Company Inc. ("NWHM"); New York Times Co. Class

A ("NYT"); Oil States International, Inc. ("OIS"); Omega Flex, Inc. ("OFLX"); Pathfinder

Bancocorp, Inc. ("PBHC"); Park Electrochemical Corp. ("PKE"); Pointer Telocation Ltd.

("PNTR"); Popular, Inc.- Popular Capital Trust I ("BPOPN"); Reis Inc. ("REIS"); Rush

Enterprises, Inc. Class B ("RUSHB"); Sandy Spring Bancorp ("SASR"); SB Financial

Group, Inc. ("SBFG"); Seneca Foods Corp. ("SENEA"); Southwest Georgia Financial Corp.

("SGB"); Tekmira Pharmaceuticals Corp. ("TKMR"); Versartis Inc. ("VSAR"); Vicor Corp.

("VICR"); VSE Corporation ("VSEC"); WL Ross Holding Corp. ("WLRH"); and Xenith

Bankshares Inc. ("XBKS").[3]

**The Fraudulent Scheme**

17.     In or about and between September 2014 and May 2017, WILLNER,

together with others, conspired to access protected computers, specifically, computer servers

that hosted online securities brokerage accounts ("Victim Accounts") of unwitting victims

who resided in the Eastern District of New York and elsewhere ("Intrusion Victims").  After

his co-conspirators had gained control of the Victim Accounts, WILLNER, together with

---

[3] The stocks of several of the Targeted Companies, including DOVR, NHTB, WLRH, INTLL, DEG, and TKMR, are either no longer publicly listed, or trade under different stock ticker symbols.

others, used the Victim Accounts in various unauthorized ways to commit a securities fraud scheme. The scheme involved placing unauthorized trades from the Victim Accounts for the benefit of other accounts controlled by WILLNER and/or his co-conspirators ("Aggressor Accounts"). To fund these unauthorized trades and steal the Intrusion Victims' money, WILLNER's co-conspirators sometimes liquidated existing positions in the Victim Accounts or wired additional money into the Victim Accounts from the Intrusion Victims' linked bank accounts.

18. Based on information learned in the course of this investigation, including my review of trading records, bank records, electronic communications, and FBI interviews of certain Intrusion Victims, there is probable cause to believe that WILLNER, together with others, made fraudulent short sales against Victim Accounts to effect the scheme, particularly during pre-market and after-hours trading.

19. For example, in many instances, WILLNER used an Aggressor Account in his name to place short sale offers for the stocks of Targeted Companies at specified artificially high prices (i.e., above the prevailing market prices) during pre-market or after-hours trading. At or about the same time, WILLNER's co-conspirators used Victim Account(s) to place buy orders at prices that matched the short sale prices from WILLNER's Aggressor Account(s).[4] By so doing, the Victim Account allowed WILLNER to execute his offered short sale at an artificially high price. After the initial short sale transaction was

---

[4] These transactions are highly unusual because typically, no rational market actor would purchase a stock at a price significantly higher than the stock's prevailing market price. In the example set out in supra in paragraph 5, for example, no rational actor would typically agree to buy a stock at $12 when the prevailing stock price was $10; a rational actor would simply buy the stock at $10.

completed, WILLNER and his co-conspirators "covered" the short in two principal ways. One way was to purchase the stock back at the prevailing market price. In those instances, WILLNER and his co-conspirators immediately profited in the amount of the difference between the artificially high short sale price and the cover at the lower market price. In other instances, the co-conspirators used Victim Accounts to sell the same stocks back to WILLNER's Aggressor Account at a price below the prevailing market price. WILLNER and the co-conspirators thus covered the short sale and profited in the amount of the difference between the artificially high short sale price and the artificially low cover price.

20. In addition, WILLNER and his co-conspirators used Victim Accounts to manipulate the prices of stocks held by Aggressor Accounts. For example, WILLNER's co-conspirators would use a Victim Account to make a series of stock purchases at increasing prices in one of the Targeted Companies, thereby artificially pushing up the price of the stock, including the stock held by the Aggressor Account. WILLNER and his co-conspirators then used the stock manipulation to generate fraudulent profits in the Aggressor Accounts, making profitable trades based on either the artificially high, or the artificially low, stock price.

**WILLNER's Communications with**
**Co-Conspirator 1 and Others Concerning the Scheme**

21. Documents obtained through subpoenas and search warrants reveal that from at least September 2014 through May 2017, both dates being approximate and inclusive, WILLNER repeatedly communicated with Co-Conspirator 1 concerning the scheme to trade stocks using Victim Accounts in order to make profits in Aggressor Accounts held in WILLNER's name. These documents also show that in or about April

2015, WILLNER and Co-Conspirator 1 began trading stocks using Victim Accounts and Aggressor Accounts as part of the scheme.

22. In September and October 2014, WILLNER and Co-Conspirator 1 exchanged messages over an online communication service ("OCS"), wherein Co-Conspirator 1 invited WILLNER to participate in the stock fraud and manipulation scheme.[5] On or about September 23, 2014, Co-Conspirator 1 posted a public OCS message to WILLNER, asking to communicate "in private." In a later message the same day, Co-Conspirator indicated, in substance, that he needed someone "in live chat" to help him with "orders," i.e., trading, and Co-Conspirator 1 stated he would pay WILLNER a percentage of the trading profits. WILLNER directed Co-Conspirator 1 to communicate with him on a private IRC channel.[6] On or about September 24, 2014, Co-Conspirator 1 sent WILLNER

_____

[5] WILLNER's OCS communications were obtained through search warrants and subpoena. WILLNER used multiple online nicknames or "nics" on OCS to communicate with Co-Conspirator 1 and others. The messages appear to correspond with trading activity in brokerage accounts in WILLNER's name. One such nic used by WILLNER was the username @a5hi, with the corresponding subscriber name "Heikin-Ashi" (the "HeikinAshi OCS Account"). On multiple occasions in November and December 2013, the HeikinAshi OCS Account was accessed from an IP address associated at that time with WILLNER's home address in Pennsylvania. WILLNER used a similar nic "HeikinAshi2," on Twitter (the "HeikinAshi Twitter Account"). The HeikinAshi Twitter Account was registered in January 2015 from an IP address associated with WILLNER's home address in Pennsylvania, and was accessed from November 2016 through January 2017 from IP addresses associated with WILLNER's home address. In addition, in February 2015, an OCS user messaged Co-Conspirator 1 stating, in relevant part, "HAshi needs you to contact him b4 2mrw on Twitter at (HeikinAshi2) on twitter," indicating that the same person controlled the HeikinAshi Twitter Account and the HeikinAshi OCS Account.

[6] IRC stands for "Internet Relay Chat," a method of sending direct messages to another user. IRC also allows one-on-one communications via private messages and group communications through chat rooms or channels. IRC works on a client/server networking model, and the IRC servers are often located outside of the United States. For this reason, IRC is viewed as a secure method of communicating with others.

an OCS message asking if WILLNER was "coming to mIRC?"[7] WILLNER responded affirmatively. On or about September 26, 2014, WILLNER sent Co-Conspirator 1 an OCS message suggesting WILLNER would be on IRC soon.

23. On the same date, WILLNER posted a message to another OCS user in which WILLNER appeared to comment on a prior conversation with Co-Conspirator 1. WILLNER told the other OCS user, in substance, that WILLNER wanted to communicate with the OCS user via IRC about Co-Conspirator 1's offer, indicating that he knew that the offer was "super shady." WILLNER indicated that he wanted to speak to the other OCS user regarding how Co-Conspirator 1 could "screw" WILLNER or leave him "holding a bag."

24. On October 3, 2014, WILLNER sent OCS messages to another OCS user, in which he referred to Co-Conspirator 1 by one of Co-Conspirator 1's online nicknames or "nic(s)," and again referred to the "offer," which WILLNER indicated might be "shady" and draw attention from law enforcement:

> what convo with [Co-Conspirator 1 nic]? days ago his offering, prob too shady paying him in bitcoin after making gains with him
>
> [Co-Conspirator 1 nic] is shady i not sure he will be of use to us withlegit sight unless he manips some stuff in our and our subs favor
>
> lol then wed really [ha]ve to charge big but its just too shady with him[] a[nd] i think i spooked him
>
> could have been someo[ne] else that a/h blip i showed you in tkmr yday but may have been him and when i asked him if it was him

---

[7] mIRC is an IRC client for Microsoft Windows.

> so i may have spooked im and never here f[ro]m him again. just good
> to keep as ally we dont want russian hackers hacking our site[8]

Based on my training, experience and knowledge of the investigation, I believe the reference

to "paying him in bitcoin after making gains with him" refers to paying Co-Conspirator 1 in

bitcoin, a virtual cryptocurrency, after profiting from trading against Victim Accounts with

Co-Conspirator 1. The statement about Co-Conspirator 1 being "shady," and "not sure he

will be of use to us . . . unless he manips some stuff in our and our subs favor," appears to

refer to WILLNER's belief that Co-Conspirator 1 would only be useful to WILLNER and

the other OCS user if Co-Conspirator 1 manipulated certain stock prices in order to make

their stock trading profitable. "That a/h blip I showed you in tkmr yday [] may have been

him" appears to refer to a price change in the after-hours share price of TKMR (Tekmira

Pharmaceuticals), which WILLNER believed Co-Conspirator 1 may have caused. Finally,

the statement: "just good to keep as ally we dont want Russian hackers hacking our site"

apparently reflects WILLNER's belief that Co-Conspirator 1 was a computer hacker.

  25.  On or about October 8, 2014, WILLNER posted an OCS message

stating, in relevant part:

> there are foreigners who can exploit glitches on ou[r] markets to
> Implement cheat and make instant easy gains.
>
> . . . there are also Russian and Chinese hackers that can make money on
> our market at will
>
> So makes me wonder why I continue to play in a rigged game with no
> advantage and no cheating while foreigners use as ATM

---

[8] Communications quoted herein have not been edited to correct grammatical and/or
spelling errors, except where indicated in brackets.

26.     In or about February 2015, WILLNER and Co-Conspirator 1 began corresponding through Twitter direct messaging wherein they ultimately agreed that WILLNER would execute trades against Victim Accounts, and they would share the proceeds of those trades.   On or about February 11, 2015, WILLNER told Co-Conspirator 1: "I need to rebuild with you."   Co-Conspirator 1 responded, in sum and substance that he would "do th[]at shit again soon," adding, "I did on one stock 200% lol on pre," implying that Co-Conspirator 1 had profited 200% by trading during the pre-market hours.   Co-Conspirator 1 added: "legal trading too hard."   WILLNER responded: "Seriously bro I need your help to rebuild or I will be knocked out [o]f the game[.]   I will be good trading partner."   Co-Conspirator 1 responded: "yeah u remmbr deal.. I can do that shit in half half profit maybe tomorrow we do one or today."   WILLNER said, in sum and substance, that he was worried about sending money to Co-Conspirator 1, noting it was "sketchy but there are ways."   Co-Conspirator 1 instructed WILLNER to pay him in bitcoin.

27.     On the same date, Co-Conspirator 1 explained that he and WILLNER could trade stocks where the bid was ".0000000001" and the ask was "1,999999999" and "we can put short of any amount and I will buy it."   WILLNER responded: "yeah I rem[em]ber how it works for the most part I will work with you."   Based on my training, experience and knowledge of the investigation, the reference to a stock with a bid of ".0000000001" and an ask of "1,999999999" likely refers to illiquid stock with a high spread between the bid and the ask price.   The statement "we can put short of any amount and I will buy it," appears to mean placing a short sale order for a stock at an artificially high price and then buying the same stock using a Victim Account.

28.     Also on or about February 11, 2015, WILLNER told Co-Conspirator 1

that he had an account at TD Ameritrade ("TDA"). TDA records show that WILLNER

conducted online stock trading through a TDA account ending in -9701 registered in

WILLNER's name (the "WILLNER TDA Account") from approximately mid-December

2014 to late April 2015.[9]

**Examples of WILLNER Trading against Intrusion Victims**

29.     Evidence obtained through subpoenas and search warrants shows that

in or about and between April 2015 and July 2016, WILLNER engaged in fraudulent trading

activity against Victim Accounts on numerous occasions. A list of some of those fraudulent

trades, involving trading against 50 Victim Accounts in specified stocks and on specified

dates and times, is attached to this affidavit as Exhibit 1.[10]

30.     As outlined in the examples below, WILLNER's communications with

Co-Conspirator 1, WILLNER's trading records, and records obtained from the affected

brokerages houses, show that WILLNER and Co-Conspirator 1 agreed to and did execute

pre-arranged fraudulent stock trades against Victim Accounts. An FBI agent who had direct

conversations with some of the Intrusion Victims has informed me regarding his

---

[9] On or about February 13, 2015, WILLNER sent a series of direct messages to Co-Conspirator 1 on Twitter indicating that WILLNER had traded SGNL (Signal Genetics, Inc.) and GENE (Genetic Technologies, Ltd.) at specific prices, and WILLNER had lost a specific amount of money on the trades. Based on my review of the WILLNER TDA Account, these messages are consistent with trades and attempted trades conducted within that account on the same date.

[10] Exhibit 1 includes a list of some of WILLNER's fraudulent trades on or about and between April 10, 2015 and July 7, 2016. This exhibit does not capture all of WILLNER's fraudulent trading activity, but is rather an overview of particular activity that I submit establishes probable cause for this Court to issue an arrest warrant for WILLNER for the crimes outlined herein, together with the information contained in this affidavit.

conversations with those Intrusion Victims, and I have read reports compiled by individuals

from the brokerage companies who spoke directly to their company's particular Intrusion

Victim(s). I also interviewed an Intrusion Victim who resides in Queens, New York.

These conversations and reports have confirmed that none of the Intrusion Victims permitted

or authorized anyone to access their online trading accounts and execute the particular trades

on their behalf.

    31.    Notably, WILLNER's trades against Victim Accounts often correspond

to dates on which WILLNER and Co-Conspirator 1 exchanged Twitter direct messages

agreeing to switch to different communication platforms such as IRC, where they would

have been able to communicate in real time to execute trades against Victim Accounts.

**Intrusion Victim 1**

    32.    For example, on or about April 10, 2015, at approximately 2:59 p.m.,

WILLNER sent Co-Conspirator 1 a Twitter direct message asking: "can you do a/h," i.e.,

after-hours trading. Co-Conspirator 1 responded affirmatively, and stated, in relevant part

that he could do a big percentage instantly and share the proceeds with WILLNER but that

Co-Conspirator 1 no longer had an online trading account because it had been closed. At

approximately 4:13 p.m., WILLNER instructed Co-Conspirator 1 to communicate on IRC.

At approximately 4:24 p.m., Co-Conspirator 1 stated (via Twitter) that he was on IRC.

    33.    Records obtained from TDA reveal that at approximately 5:22 p.m. that

same day, the WILLNER TDA Account placed a short sale order for 537 shares of FCCO

(First Community Corporation) at $14.88 per share during after-hours trading, which was

later executed against a Victim Account held at a brokerage firm known to your deponent

("Brokerage Firm A") in the name of an individual whose name is known to your deponent

("Intrusion Victim 1"). Notably, the closing price of FCCO on April 10, 2015 was $11.64, approximately 24% lower than $14.88. At approximately 5:23 p.m., Intrusion Victim 1's account placed a buy order for 537 shares of FCCO for $14.88 per share, matching WILLNER's short sale offer. A few seconds later, both WILLNER's short sale order and Intrusion Victim 1's buy order were executed. At approximately 5:26 p.m., the WILLNER TDA Account placed a buy order 537 shares of FCCO at $9.40 per share. Approximately six minutes later, Intrusion Victim 1 placed a sell order for the same number of shares of FCCO at the same price, a price approximately 19% lower than the $11.64 closing price, and the orders were executed. This series of transactions generated a gross profit of $2,942.76 for WILLNER. Significantly, the buy and sell orders initiated from Intrusion Victim 1's account guaranteed a loss of $2,942.76 from a series of transactions that, based upon my training and experience, I believe no rational market actor would make.

34.    Intrusion Victim 1's FCCO trades were initiated via Brokerage Firm A's online trading website, which requires a username and password to login. According to Brokerage Firm A, Intrusion Victim 1 did not place orders to trade FCCO on April 10, 2015, and did not authorize anyone else to trade his/her account. Login data from Brokerage Firm A shows that shortly before the above-described FCCO trades, Intrusion Victim 1's online trading account was accessed from two IP addresses that were different from the IP address that normally accessed the account. In addition, the UA information for the operating system of the device that accessed Intrusion Victim 1's online trading account shortly before the FCCO trades was different than the normal UA. Furthermore, the FCCO trades were placed using an advanced trading platform offered by Brokerage Firm A that Intrusion

Victim 1's account had never before used, according to information provided by Brokerage Firm A.

35.     On or about April 10, 2015, a short time before the FCCO trades described above, TDA sent an email to WILLNER informing him of the prohibition against "manipulative trading," which included engaging in "pre-arranged trading with other parties." During a series of Twitter direct messages sent between April 11 and April 15, 2015, WILLNER informed Co-Conspirator 1 that TDA had "yelled at" him for "placing high orders," and that TDA would "close the account."

36.     On or about April 11, 2015, one day after the unauthorized trading against Intrusion Victim 1, WILLNER sent a Twitter direct message to Co-Conspirator 1 indicating that WILLNER had bitcoin ready for Monday, i.e., April 13, 2015. As discussed above, Co-Conspirator 1 previously instructed WILLNER to pay him half of the profits generated from trading against Intrusion Victims in bitcoin.

37.     On or about and between April 14 and April 15, 2015, WILLNER and Co-Conspirator 1 exchanged multiple Twitter direct messages concerning WILLNER's delay in paying Co-Conspirator 1. On or about April 15, 2015, Co-Conspirator 1 stated, in sum and substance, that WILLNER owed Co-Conspirator 1 fifty percent of $2,900.00, i.e., $1,450.00. As discussed above, the net profit generated from trading FCCO against Intrusion Victim 1 on April 10, 2015, was approximately $2,942.76. On or about April 15, 2015, WILLNER indicated he would send bitcoin to Co-Conspirator 1 that day.

38.     Coinbase is an online platform that allows users to convert government-backed currency, for example, United States dollars, to bitcoin, and to send and receive payments in bitcoin. On or about April 10, 2015, WILLNER created a Coinbase

account in his own name ("WILLNER Coinbase Account") from the IP address associated at that time with WILLNER's home address in Pennsylvania. The address of record for the WILLNER Coinbase Account is WILLNER's home address in Pennsylvania; the date of birth and social security number are the same as WILLNER's; and the email address of record is the same email address contained in WILLNER TDA Account records.

39.     On or about April 15, 2015, the WILLNER Coinbase Account purchased approximately $1,000 worth of bitcoin, funded via a linked Santander bank account in WILLNER's name. On the same date, WILLNER sent a Twitter direct message to Co-Conspirator 1 stating that a specific amount of bitcoin would arrive in WILLNER's bitcoin wallet[11] on April 21, 2015. The bitcoin amount referenced in WILLNER's message to Co-Conspirator 1 was the same bitcoin amount WILLNER purchased on April 15, 2015, and the bitcoin delivery date was consistent with Coinbase records.

## Restriction of the WILLNER TDA Account and Opening of Lightspeed Account

40.     In addition to the trades described above, between April 10, 2015 and April 14, 2015, the WILLNER TDA Account executed multiple trades against Victim Accounts, which were reversed shortly thereafter by the brokerage houses based on their belief that WILLNER was matching trades against accounts that had been subjected to unauthorized access. In addition, on or about April 14, 2015, a representative from TDA called WILLNER and told him during a recorded call, in substance, that a number of trades submitted or executed by WILLNER had been identified by TDA as being potentially

---

[11] A bitcoin wallet is the bitcoin equivalent of a bank account, and allows a user to receive, store, and send bitcoin.

fraudulent based upon the apparently irrational difference between the prevailing market prices of the stocks and WILLNER's trades. During the ensuing week, WILLNER and Co-Conspirator 1 exchanged multiple Twitter direct messages discussing the maximum percentage difference they should trade above or below the prevailing market price to avoid detection. On or about April 20, 2015, TDA restricted the WILLNER TDA Account.[12] Later that same day, Co-Conspirator 1 direct messaged WILLNER, stating: "15% is legit.. nothing mor[e]."

41. Also on that day, WILLNER opened an online trading account at Lightspeed Trading ending in -0263 in his name ("WILLNER Lightspeed Account"), which was funded via a $35,000.00 wire transfer from a Vanguard account in his name on or about April 22, 2015.

**Intrusion Victim 2**

42. On or about April 24, 2015, WILLNER and Co-Conspirator 1 exchanged Twitter direct messages about having difficulty connecting to IRC during the day; they then agreed to do after-hours trading. On the same date, at approximately 6:25 p.m., the WILLNER Lightspeed Account placed a short sale order of 2,300 shares of SBFG (SB Financial Group, Inc.) at $12.24 per share during after-hours trading, which was later executed against a Victim Account held at Brokerage Firm A in the name of an individual whose name is known to your deponent ("Intrusion Victim 2"). At approximately 6:33 p.m., Intrusion Victim 2's account placed a buy order for 2,300 shares of SBFG at $12.24 per

---

[12] On or about May 13, 2015, TDA sent a letter to WILLNER informing him that TDA had decided to terminate its business relationship with WILLNER and that WILLNER should not attempt to open a new TDA account.

share. Notably, the closing price of SBFG on April 24, 2015 was $10.97, approximately 11.57% lower than $12.24. At approximately 6:35 p.m., the WILLNER Lightspeed Account placed a buy order to cover for 2,300 shares of SBFG at $8.24 per share. Approximately one minute later, Intrusion Victim 2's account placed a sell order for the same number of shares of SBFG at the same price per share. This series of transactions generated a gross profit of $9,200 for WILLNER and a gross loss of the same amount for Intrusion Victim 2. Approximately two hours later, Co-Conspirator 1 sent WILLNER a Twitter message indicating that WILLNER needed to pay Co-Conspirator 1.

43.     Intrusion Victim 2's SBFG trades occurred via Brokerage Firm A's online trading website, which required both a username and password. According to Brokerage Firm A, Intrusion Victim 2 did not place orders to trade SBFG on April 24, 2015, and did not authorize anyone else to trade his/her account. Login data from Brokerage Firm A shows that shortly before the SBFG trades described above, Intrusion Victim 2's online trading account was accessed from an IP address that was not among the two IP addresses that normally accessed the account. In addition, the UA that accessed Intrusion Victim 2's online trading account shortly before the SBFG trades was different from the two UAs that normally accessed the account.

**Intrusion Victim 3**

44.     On or about Friday, October 9, 2015, at approximately 7:05 p.m., the WILLNER Lightspeed Account placed a short sale order for 900 shares of SASR (Sandy Spring Bancorp Inc.) at $29.88 per share during after-hours trading against a Victim Account held at brokerage firm known to your deponent ("Brokerage Firm B") in the name of an individual whose name is known to your deponent and who resides in the Eastern District of

New York ("Intrusion Victim 3"). Notably, the closing price of SASR on October 9, 2015, was $26.68, approximately 12% lower than $29.88. According to Brokerage Firm B and Intrusion Victim 3's statements to the FBI, this victim did not place orders to trade SASR on October 9, 2015 and did not authorize anyone else to trade his/her account.

45. From approximately 7:11 p.m. to 7:27 p.m., the WILLNER Lightspeed Account placed buy orders for SASR. These orders were not executed, however, and were ultimately cancelled.

46. On the next regular trading day, on or about Monday, October 12, 2015, between approximately 10:42 a.m. and 12:33 p.m., the WILLNER Lightspeed Account purchased 900 shares of SASR during regular trading hours at prices between $26.90 and $27.02 per share, thus covering his short sale and generating gross profits of $2,641.

**Intrusion Victim 4**

47. On or about May 12, 2016, at approximately 8:12 a.m., the WILLNER Lightspeed Account placed a short sale order for 9,000 shares of EARS (Auris Medical Holding AG) at $3.89 per share during pre-market trading, which was executed against a Victim Account held at a brokerage firm known to your deponent ("Brokerage Firm C") in the name of an individual whose name is known to your deponent and who resides in the Eastern District of New York ("Intrusion Victim 4"). Notably, the closing price of EARS on May 11, 2016 was $3.53, approximately 9% lower than $3.89. At approximately 8:15 a.m., the WILLNER Lightspeed Account purchased to cover 9,000 shares of EARS from Intrusion Victim 4 at $3.20 per share. This series of transactions generated a gross profit of $6,210.00 for WILLNER.

48.     I interviewed Intrusion Victim 4, who stated, in sum and substance, that he/she had not executed any trades in EARS on May 12, 2016 and that he/she had not authorized anyone else to do so on his/her behalf. Intrusion Victim 4 stated, in sum and substance, that on May 12, 2016, he/she had twice attempted to log into his/her online trading account, and on each occasion, his/her account was "locked." Intrusion Victim 4 stated that he/she then called his/her broker and learned about the unauthorized trades.

49.     Intrusion Victim 4's account at Brokerage Firm C executed trades through an order management system provided by a market data company based in Carmel, New York ("Data Company 1"). As such, the unauthorized EARS trades described above were initiated by accessing Data Company 1's server. Records obtained from Data Company 1 show that shortly before the above-described trades, Intrusion Victim 4's account at Data Company 1 was accessed from an IP address that was different from the IP addresses that normally accessed the account. In addition, on or about May 2, 2016, ten days before the unauthorized trading discussed above, Intrusion Victim 4's account at Data Company 1 was accessed from a device with a MAC address that had never before accessed Intrusion Victim 4's account, according to records provided by Data Company 1. On or about the same date, the password to Intrusion Victim 4's online trading account was changed.

**Intrusion Victim 5**

50.     On May 17, 2016, from approximately 1:08 p.m. through 2:03 p.m., the WILLNER Lightspeed Account bought 18,100 shares of LAWS (Lawson Products Inc.) at prices ranging from approximately $18.70 to $19.15 per share, and sold 18,100 shares of LAWS at prices ranging from $18.88 to $20.11 per share. As a result, the WILLNER

Lightspeed Account generated gross profits of approximately $15,293 from LAWS trades on that day alone.

51.     WILLNER's profitable trading resulted from the manipulation of LAWS' stock price by nearly simultaneous unauthorized online trades in LAWS in a Victim Account belonging to an individual whose name is known to your deponent ("Intrusion Victim 5"). Trades in this Victim Account were ultimately executed through a U.S.-based brokerage firm known to your deponent ("Brokerage Firm D"), and from approximately 1:12 p.m. through 1:52 p.m. on May 17, 2016, Intrusion Victim 5's account purchased 66,082 shares of LAWS at prices ranging from approximately $19.01 to $19.99 per share and sold 56,000 shares of LAWS at prices ranging from approximately $18.73 to $19.10 per share. Intrusion Victim 5 lost approximately $35,530 as a result of this unauthorized trading in LAWS.

52.     Later that same day, Intrusion Victim 5's offshore brokerage firm contacted Brokerage Firm D email stating, in relevant part: "Our account with . . . was hacked and someone bought a thinly traded stock symbol LAWS. . . . You can see from the trades that this stock rarely ever trades and was manipulated." Intrusion Victim 5's account at Brokerage Firm D also executed trades through Data Company 1. Login records from Data Company 1 show that during the timeframe the unauthorized LAWs trades occurred, Intrusion Victim 5's account at Data Company 1 was accessed from an IP address that had never before been used to access the account, according to information provided by Data Company 1.

53.     LAWS was a Nasdaq listed micro-cap stock with a market capitalization of less than $200 million. With the exception of May 17, 2016, the daily

trading volume in LAWS during May 2016 ranged from approximately 7,500 shares to approximately 24,500 shares. On May 17, 2016, however, trading volume in LAWS exceeded 171,000 shares.

54. Based on a review of LAWS trading activity for this day, it appears that the conspirators manipulated the price of LAWS both up and down in order to generate profits in Aggressor Accounts, including WILLNER's Lightspeed Account. For example, between approximately 1:10 p.m. and 1:19 p.m., conspirators used Intrusion Victim 5's account to place buy orders for LAWS at increasing prices from approximately $18.82 to $19.99 per share, driving up the price by approximately 5%. During this same approximate time period, the WILLNER Lightspeed Account sold, and sold short, LAWS stock. From approximately 1:26 p.m. to 1:30 p.m., the conspirators placed four sell orders for LAWS from Intrusion Victim 5's account at decreasing prices ranging from approximately $19.07 to $18.80 per share, reducing the price by more than 5%. During this same approximate time period, the WILLNER Lightspeed Account purchased LAWS stock. The conspirators then repeated the cycle by placing a series of buy orders in Intrusion Victim 5's account at prices ranging from approximately $19.31 to $19.50 per share, and subsequently placed a series of sell orders from Intrusion Victim 5's account at prices ranging from approximately $19.01 to $18.73 per share.

55. WILLNER and others took advantage of the large fluctuations in the price of LAWS by trading on the opposite side of Intrusion Victim 5. For example, at approximately 1:18 p.m., Intrusion Victim 5's account placed a buy order for 10,000 shares of LAWS at $19.99 per share. At approximately the same time, the WILLNER Lightspeed Account sold short 8,360 shares of LAWS at $19.99 per share. At approximately 1:36 p.m.,

Intrusion Victim 5's Account placed a buy order for 10,000 shares of LAWS at $19.50 per share. At approximately the same time, short sale orders from the WILLNER Lightspeed Account for 5,400 shares of LAWS at $19.50 per share were executed.

**Intrusion Victim 6**

56. On or about May 31, 2016, at approximately 5:29 p.m., the WILLNER Lightspeed Account placed a short sale order for PKE (Park Electrochemical Corp., a company located in the Eastern District of New York) that was executed for 1,550 shares at $18.32 per share during after-hours trading against an online Victim Account held at Brokerage Firm B in the name of an individual whose name is known to your deponent ("Intrusion Victim 6"). Notably, the closing price of PKE on May 31, 2016 was $16.36, approximately 12% lower than $18.32. At approximately 5:29 a.m., the WILLNER Lightspeed Account purchased to cover 1,550 shares of PKE at $16.52 per share against Intrusion Victim 6, and generating gross profits of $2,790.00.

57. According to Brokerage Firm B, Intrusion Victim 6 did not place orders to trade PKE on May 31, 2016 and did not authorize anyone else to trade his/her account.

**Losses Incurred By Intrusion Victims**

58. From April 2015 to August 2016, WILLNER appears to have obtained gross profits exceeding $700,000 related to his fraudulent trading. During the same timeframe, the WILLNER Coinbase Account sent payments totaling approximately

$237,120 to bitcoin addresses believed to be controlled by Co-Conspirator 1.[13]

59.     Further, based upon my review of WILLNER's trades and the

unauthorized trades conducted in the Victim Accounts on the same dates and approximate

times as the WILLNER trades, the brokerage firms that held the Intrusion Victims' accounts

appear to have incurred losses exceeding $2,000,000 in connection with the conspiracy

described herein.

WHEREFORE, your deponent respectfully requests that an arrest warrant be

issued for the defendant JOSEPH P. WILLNER so that he may be dealt with according to

law.  Because public filing of this document could result in a risk of flight by the defendant

JOSEPH P. WILLNER, as well as jeopardize the government's ongoing

investigation, your deponent respectfully requests that this complaint, as well as any arrest

---

[13] I have reviewed WILLNER's Twitter direct messages with Co-Conspirator 1, and compared them with WILLNER's Coinbase records related to his bitcoin payments.  Based upon my review of those records, I believe that WILLNER set up a Coinbase account primarily, if not exclusively, to make payments to Co-Conspirator 1 as part of the conspiracy.  Among other things, Co-Conspirator 1 instructed WILLNER to pay him a portion of their trading profits in bitcoin, and Co-Conspirator 1 sent messages to WILLNER directing WILLNER to transfer him specific dollar amounts in bitcoin.  After receiving these instructions, WILLNER ordered bitcoin and sent the same specific dollar amounts to various bitcoin addresses.

warrant issued in connection with this complaint, be filed under seal, except that the

complaint and arrest warrant may submitted to a United States Magistrate Judge in the

Eastern District of Pennsylvania as part of a search warrant application for WILLNER's

residence.

_____

MATTHEW E. BITTERMAN
Special Agent, Federal Bureau of Investigation

Sworn to before me this
8 day of June 2017

S| Lois Bloom

_____

THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# EXHIBIT 1

**EXHIBIT 1**

Certain Fraudulent Trades Involving Willner

| Fraudulent Trade Example No. | Firm | Account | Action | Stock Ticker Symbol | Executed Qty. of Shares | Executed Price | Execution Date & Time (ET) | Gross Amount | Gross Profit |
|---|---|---|---|---|---|---|---|---|---|
| 1 | TD Ameritrade | 865-429701 | Sell Short | FCCO | 537 | $14.88 | 4/10/2015 17:22:19 | $7,990.56 | |
| | TD Ameritrade | 865-429701 | Buy | FCCO | 537 | $9.40 | 4/10/2015 17:26:35 | ($5,047.80) | $2,942.76 |
| 2 | Lightspeed | 1LD40263 | Sell Short | SBFG | 2,300 | $12.24 | 4/24/2015 18:33:40 | $28,152.00 | |
| | Lightspeed | 1LD40263 | Buy | SBFG | 2,300 | $8.24 | 4/24/2015 18:36:51 | ($18,952.00) | $9,200.00 |
| 3 | Lightspeed | 1LD40263 | Sell Short | DOVR | 2,000 | $9.68 | 4/27/2015 9:13:14 | $19,360.00 | |
| | Lightspeed | 1LD40263 | Sell Short | DOVR | 2,000 | $9.68 | 4/27/2015 9:13:14 | $19,360.00 | |
| | Lightspeed | 1LD40263 | Buy | DOVR | 2,000 | $8.48 | 4/27/2015 9:35:04 | ($16,960.00) | |
| | Lightspeed | 1LD40263 | Buy | DOVR | 2,000 | $8.48 | 4/27/2015 9:38:17 | ($16,960.00) | $4,800.00 |
| 4 | Lightspeed | 1LD40263 | Sell Short | KINS | 4,000 | $8.55 | 4/27/2015 18:12:37 | $34,200.00 | |
| | Lightspeed | 1LD40263 | Buy | KINS | 4,000 | $6.34 | 4/27/2015 18:14:49 | ($25,360.00) | $8,840.00 |
| 5 | Lightspeed | 1LD40263 | Sell Short | CPHC | 4,200 | $11.78 | 4/28/2015 8:27:46 | $49,476.00 | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 3,800 | $8.72 | 4/28/2015 8:29:50 | ($33,136.00) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 88 | $10.19 | 4/28/2015 9:31:16 | ($896.72) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 46 | $10.19 | 4/28/2015 9:31:29 | ($468.74) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 14 | $10.29 | 4/28/2015 9:35:16 | ($144.06) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 96 | $10.28 | 4/28/2015 9:35:16 | ($986.88) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 104 | $10.28 | 4/28/2015 9:35:16 | ($1,069.12) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 8 | $10.29 | 4/28/2015 9:35:16 | ($82.32) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 44 | $10.29 | 4/28/2015 9:35:16 | ($452.76) | $12,239.40 |
| 6 | Lightspeed | 1LD40263 | Sell Short | NHTB | 2,700 | $17.94 | 4/29/2015 18:49:56 | $48,438.00 | |
| | Lightspeed | 1LD40263 | Buy | NHTB | 2,665 | $15.45 | 4/29/2015 19:03:40 | ($41,174.25) | |
| | Lightspeed | 1LD40263 | Buy | NHTB | 35 | $15.50 | 4/29/2015 19:03:40 | ($542.50) | $6,721.25 |
| 7 | Lightspeed | 1LD40263 | Sell Short | AMIC | 1,500 | $11.87 | 5/1/2015 8:33:56 | $17,805.00 | |
| | Lightspeed | 1LD40263 | Sell Short | AMIC | 1,500 | $11.87 | 5/1/2015 8:33:56 | $17,805.00 | |
| | Lightspeed | 1LD40263 | Sell Short | AMIC | 800 | $11.87 | 5/1/2015 8:33:58 | $9,496.00 | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 1,500 | $9.87 | 5/1/2015 8:39:05 | ($14,805.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 1,500 | $9.87 | 5/1/2015 8:39:10 | ($14,805.00) | $14,471.00 |

Case 1:17-cv-06020-BMC-ALE Document 1 Filed 06/06/08/17 Page 30 of 37 PageID 30

# EXHIBIT 1

## List of Willner's Apparently Fraudulent Trades

| | Firm | Account | Side | Ticker | Qty | Price | Date/Time | Amount | Total |
|---|---|---|---|---|---|---|---|---|---|
| 8 | Lightspeed | 1LD40263 | Buy | AMIC | 300 | $9.87 | 5/1/2015 8:39:11 | ($2,961.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 500 | $9.87 | 5/1/2015 8:45:13 | ($4,935.00) | |
| | Lightspeed | 1LD40263 | Sell Short | XBKS | 6,500 | $7.14 | 5/5/2015 17:29:53 | $46,410.00 | |
| | Lightspeed | 1LD40263 | Buy | XBKS | 6,500 | $5.04 | 5/5/2015 17:30:07 | ($32,760.00) | $13,650.00 |
| 9 | Lightspeed | 1LD40263 | Sell Short | CWAY | 100 | $13.06 | 5/11/2015 8:45:03 | $1,306.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CWAY | 1,800 | $13.06 | 5/11/2015 8:45:03 | $23,508.00 | |
| | Lightspeed | 1LD40263 | Buy | CWAY | 1,900 | $11.20 | 5/11/2015 9:30:32 | ($21,280.00) | $3,534.00 |
| 10 | Lightspeed | 1LD40263 | Sell Short | SGB | 100 | $15.93 | 5/11/2015 19:39:41 | $1,593.00 | |
| | Lightspeed | 1LD40263 | Sell Short | SGB | 3,300 | $15.93 | 5/11/2015 19:39:41 | $52,569.00 | |
| | Lightspeed | 1LD40263 | Buy | SGB | 100 | $13.50 | 5/11/2015 19:47:00 | ($1,350.00) | |
| | Lightspeed | 1LD40263 | Buy | SGB | 400 | $13.50 | 5/11/2015 19:47:00 | ($5,400.00) | |
| | Lightspeed | 1LD40263 | Buy | SGB | 1,000 | $13.85 | 5/11/2015 19:48:04 | ($13,850.00) | |
| | Lightspeed | 1LD40263 | Buy | SGB | 200 | $13.84 | 5/11/2015 19:48:04 | ($2,768.00) | |
| | Lightspeed | 1LD40263 | Buy | SGB | 200 | $13.90 | 5/11/2015 19:48:04 | ($2,780.00) | |
| | Lightspeed | 1LD40263 | Buy | SGB | 1,100 | $13.50 | 5/11/2015 19:50:30 | ($14,850.00) | |
| | Lightspeed | 1LD40263 | Buy | SGB | 400 | $13.50 | 5/11/2015 19:51:05 | ($5,400.00) | $7,764.00 |
| 11 | Lightspeed | 1LD40263 | Sell Short | CWBC | 4,800 | $8.04 | 5/14/2015 19:17:05 | $38,592.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CWBC | 100 | $8.04 | 5/14/2015 19:17:05 | $804.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CWBC | 400 | $8.04 | 5/14/2015 19:17:32 | $3,216.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CWBC | 100 | $8.04 | 5/14/2015 19:17:32 | $804.00 | |
| | Lightspeed | 1LD40263 | Buy | CWBC | 2,900 | $6.91 | 5/14/2015 19:22:42 | ($20,039.00) | |
| | Lightspeed | 1LD40263 | Buy | CWBC | 100 | $6.91 | 5/14/2015 19:22:42 | ($691.00) | |
| | Lightspeed | 1LD40263 | Buy | CWBC | 2,300 | $6.91 | 5/14/2015 19:23:27 | ($15,893.00) | |
| | Lightspeed | 1LD40263 | Buy | CWBC | 100 | $6.91 | 5/14/2015 19:23:27 | ($691.00) | $6,102.00 |
| 12 | Lightspeed | 1LD40263 | Sell Short | MMAC | 4,600 | $12.58 | 5/14/2015 19:40:44 | $57,868.00 | |
| | Lightspeed | 1LD40263 | Sell Short | MMAC | 100 | $12.58 | 5/14/2015 19:40:44 | $1,258.00 | |
| | Lightspeed | 1LD40263 | Buy | MMAC | 1,500 | $10.46 | 5/14/2015 19:43:33 | ($15,690.00) | |
| | Lightspeed | 1LD40263 | Buy | MMAC | 1,000 | $10.53 | 5/14/2015 19:45:51 | ($10,530.00) | |
| | Lightspeed | 1LD40263 | Buy | MMAC | 800 | $10.90 | 5/14/2015 19:49:50 | ($8,720.00) | |
| | Lightspeed | 1LD40263 | Buy | MMAC | 500 | $10.90 | 5/14/2015 19:50:03 | ($5,450.00) | $8,926.00 |

## EXHIBIT 1

### List of Willner's Apparently Fraudulent Trades

| # | Firm | Account | Action | Symbol | Qty | Price | Timestamp | Amount | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Lightspeed | 1LD40263 | Buy | MMAC | 500 | $10.90 | 5/14/2015 19:50:07 | ($5,450.00) | |
| | Lightspeed | 1LD40263 | Buy | MMAC | 400 | $10.90 | 5/14/2015 19:50:07 | ($4,360.00) | $8,206.56 |
| | Lightspeed | 1LD40263 | Sell Short | AMRB | 100 | $11.24 | 5/29/2015 7:57:26 | $1,124.00 | |
| | Lightspeed | 1LD40263 | Sell Short | AMRB | 2,124 | $11.24 | 5/29/2015 7:57:26 | $23,873.76 | |
| | Lightspeed | 1LD40263 | Sell Short | AMRB | 100 | $11.24 | 5/29/2015 7:57:27 | $1,124.00 | |
| 13 | Lightspeed | 1LD40263 | Sell Short | AMRB | 2,124 | $11.24 | 5/29/2015 7:57:27 | $23,873.76 | |
| | Lightspeed | 1LD40263 | Buy | AMRB | 2,124 | $9.32 | 5/29/2015 8:03:07 | ($19,795.68) | |
| | Lightspeed | 1LD40263 | Buy | AMRB | 100 | $9.32 | 5/29/2015 8:03:07 | ($932.00) | |
| | Lightspeed | 1LD40263 | Buy | AMRB | 2,224 | $9.47 | 5/29/2015 9:09:56 | ($21,061.28) | |
| | Lightspeed | 1LD40263 | Sell Short | AMIC | 100 | $11.72 | 5/29/2015 8:39:23 | $1,172.00 | |
| | Lightspeed | 1LD40263 | Sell Short | AMIC | 1,465 | $11.72 | 5/29/2015 8:39:23 | $17,169.80 | |
| | Lightspeed | 1LD40263 | Sell Short | AMIC | 100 | $11.72 | 5/29/2015 8:39:23 | $1,172.00 | |
| | Lightspeed | 1LD40263 | Sell Short | AMIC | 1,665 | $11.72 | 5/29/2015 8:39:23 | $19,513.80 | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 800 | $9.83 | 5/29/2015 8:42:11 | ($7,864.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 765 | $9.85 | 5/29/2015 8:42:11 | ($7,535.25) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 363 | $10.30 | 5/29/2015 10:08:04 | ($3,738.90) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 83 | $10.23 | 5/29/2015 10:08:04 | ($849.09) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.38 | 5/29/2015 10:13:37 | ($1,038.00) | |
| 14 | Lightspeed | 1LD40263 | Buy | AMIC | 83 | $10.38 | 5/29/2015 10:13:37 | ($861.54) | $5,283.34 |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.30 | 5/29/2015 10:14:06 | ($1,030.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 200 | $10.32 | 5/29/2015 10:14:06 | ($2,064.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.34 | 5/29/2015 10:14:06 | ($1,034.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.36 | 5/29/2015 10:15:19 | ($1,036.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.40 | 5/29/2015 10:18:42 | ($1,040.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.40 | 5/29/2015 10:18:42 | ($1,040.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.40 | 5/29/2015 10:18:42 | ($1,040.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 200 | $10.62 | 5/29/2015 13:00:30 | ($2,124.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 100 | $10.65 | 5/29/2015 13:00:30 | ($1,065.00) | |
| | Lightspeed | 1LD40263 | Buy | AMIC | 36 | $10.68 | 5/29/2015 13:00:30 | ($384.48) | |
| | Lightspeed | 1LD40263 | Sell Short | CPHC | 100 | $12.24 | 6/4/2015 19:49:25 | $1,224.00 | |

**EXHIBIT 1**

List of Willner's Apparently Fraudulent Trades

| # | Name | Account | Action | Symbol | Qty | Price | DateTime | Amount | Total |
|---|------|---------|--------|--------|-----|-------|----------|--------|-------|
| 15 | Lightspeed | 1LD40263 | Sell Short | CPHC | 2,800 | $12.24 | 6/4/2015 19:49:25 | $34,272.00 | $4,350.00 |
| | Lightspeed | 1LD40263 | Buy | CPHC | 100 | $10.74 | 6/4/2015 19:51:41 | ($1,074.00) | |
| | Lightspeed | 1LD40263 | Buy | CPHC | 2,800 | $10.74 | 6/4/2015 19:51:41 | ($30,072.00) | |
| 16 | Lightspeed | 1LD40263 | Sell Short | PBHC | 500 | $14.00 | 6/11/2015 17:34:32 | $7,000.00 | $8,823.95 |
| | Lightspeed | 1LD40263 | Sell Short | PBHC | 4,500 | $14.00 | 6/11/2015 17:34:32 | $63,000.00 | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 500 | $12.19 | 6/11/2015 17:35:40 | ($6,095.00) | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 700 | $12.19 | 6/11/2015 17:35:40 | ($8,533.00) | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 500 | $12.19 | 6/11/2015 17:38:02 | ($6,095.00) | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 1,500 | $12.19 | 6/11/2015 17:38:02 | ($18,285.00) | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 600 | $12.30 | 6/12/2015 9:30:10 | ($7,380.00) | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 639 | $12.30 | 6/12/2015 9:31:30 | ($7,859.70) | |
| | Lightspeed | 1LD40263 | Buy | PBHC | 561 | $12.35 | 6/12/2015 9:32:38 | ($6,928.35) | |
| 17 | Lightspeed | 1LD40263 | Sell Short | KTEC | 3,600 | $14.26 | 6/23/2015 9:02:44 | $51,336.00 | $4,442.80 |
| | Lightspeed | 1LD40263 | Buy | KTEC | 80 | $12.91 | 6/23/2015 9:34:08 | ($1,032.80) | |
| | Lightspeed | 1LD40263 | Buy | KTEC | 200 | $13.01 | 6/23/2015 9:35:27 | ($2,602.00) | |
| | Lightspeed | 1LD40263 | Buy | KTEC | 800 | $13.01 | 6/23/2015 9:35:42 | ($10,408.00) | |
| | Lightspeed | 1LD40263 | Buy | KTEC | 1,000 | $13.04 | 6/23/2015 9:36:44 | ($13,040.00) | |
| | Lightspeed | 1LD40263 | Buy | KTEC | 1,000 | $13.04 | 6/23/2015 9:37:15 | ($13,040.00) | |
| | Lightspeed | 1LD40263 | Buy | KTEC | 520 | $13.02 | 6/23/2015 9:37:46 | ($6,770.40) | |
| 18 | Lightspeed | 1LD40263 | Sell Short | HCAP | 400 | $16.02 | 7/2/2015 19:12:05 | $6,408.00 | $5,356.00 |
| | Lightspeed | 1LD40263 | Sell Short | HCAP | 2,200 | $16.02 | 7/2/2015 19:12:05 | $35,244.00 | |
| | Lightspeed | 1LD40263 | Buy | HCAP | 2,600 | $13.96 | 7/2/2015 19:13:55 | ($36,296.00) | |
| 19 | Lightspeed | 1LD40263 | Sell Short | HIHO | 400 | $4.36 | 7/15/2015 18:25:24 | $1,744.00 | $3,068.98 |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 1,000 | $4.36 | 7/15/2015 18:26:25 | $4,360.00 | |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 600 | $4.36 | 7/15/2015 18:27:40 | $2,616.00 | |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 300 | $4.37 | 7/15/2015 18:28:59 | $1,311.00 | |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 1,688 | $4.37 | 7/15/2015 18:28:59 | $7,376.56 | |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 100 | $4.37 | 7/15/2015 18:30:22 | $437.00 | |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 200 | $4.37 | 7/15/2015 18:30:51 | $874.00 | |
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 712 | $4.37 | 7/15/2015 18:30:51 | $3,111.44 | |

**EXHIBIT 1**

List of Willner's Apparently Fraudulent Trades

| # | Firm | Account | Side | Symbol | Qty | Price | Date/Time | Amount | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Lightspeed | 1LD40263 | Sell Short | HIHO | 813 | $4.46 | 7/15/2015 18:34:05 | $3,625.98 | |
| | Lightspeed | 1LD40263 | Buy | HIHO | 500 | $3.83 | 7/15/2015 18:37:13 | ($1,915.00) | |
| | Lightspeed | 1LD40263 | Buy | HIHO | 500 | $3.83 | 7/15/2015 18:37:17 | ($1,915.00) | |
| | Lightspeed | 1LD40263 | Buy | HIHO | 1,500 | $3.78 | 7/15/2015 18:37:37 | ($5,670.00) | |
| | Lightspeed | 1LD40263 | Buy | HIHO | 2,000 | $3.78 | 7/15/2015 18:37:56 | ($7,560.00) | |
| | Lightspeed | 1LD40263 | Buy | HIHO | 300 | $4.25 | 7/15/2015 19:49:34 | ($1,275.00) | |
| | Lightspeed | 1LD40263 | Buy | HIHO | 1,013 | $4.00 | 7/16/2015 9:30:01 | ($4,052.00) | $3,750.00 |
| 20 | Lightspeed | 1LD40263 | Sell Short | WLRH | 500 | $11.94 | 9/9/2015 9:08:56 | $5,970.00 | |
| | Lightspeed | 1LD40263 | Sell Short | WLRH | 500 | $11.94 | 9/9/2015 9:08:56 | $5,970.00 | |
| | Lightspeed | 1LD40263 | Sell Short | WLRH | 500 | $11.94 | 9/9/2015 9:08:56 | $5,970.00 | |
| | Lightspeed | 1LD40263 | Sell Short | WLRH | 500 | $11.94 | 9/9/2015 9:08:56 | $5,970.00 | |
| | Lightspeed | 1LD40263 | Sell Short | WLRH | 500 | $11.94 | 9/9/2015 9:08:56 | $5,970.00 | |
| | Lightspeed | 1LD40263 | Buy | WLRH | 500 | $10.44 | 9/9/2015 9:13:45 | ($5,220.00) | |
| | Lightspeed | 1LD40263 | Buy | WLRH | 2,000 | $10.44 | 9/9/2015 9:13:45 | ($20,880.00) | |
| 21 | Lightspeed | 1LD40263 | Sell Short | PNTR | 200 | $7.14 | 9/15/2015 16:30:39 | $1,428.00 | $950.00 |
| | Lightspeed | 1LD40263 | Sell Short | PNTR | 800 | $7.14 | 9/15/2015 16:30:39 | $5,712.00 | |
| | Lightspeed | 1LD40263 | Buy | PNTR | 100 | $6.19 | 9/15/2015 16:34:21 | ($619.00) | |
| | Lightspeed | 1LD40263 | Buy | PNTR | 900 | $6.19 | 9/15/2015 16:34:21 | ($5,571.00) | |
| 22 | Lightspeed | 1LD40263 | Sell Short | INTLL | 140 | $29.38 | 9/21/2015 18:26:59 | $4,113.20 | $7,218.20 |
| | Lightspeed | 1LD40263 | Buy | INTLL | 100 | $25.80 | 9/21/2015 18:27:40 | ($2,580.00) | |
| | Lightspeed | 1LD40263 | Buy | INTLL | 40 | $25.80 | 9/21/2015 18:27:40 | ($1,032.00) | |
| 23 | Lightspeed | 1LD40263 | Sell Short | BPOPN | 100 | $22.74 | 9/29/2015 17:12:06 | $2,274.00 | $2,272.00 |
| | Lightspeed | 1LD40263 | Sell Short | BPOPN | 700 | $22.74 | 9/29/2015 17:12:06 | $15,918.00 | |
| | Lightspeed | 1LD40263 | Buy | BPOPN | 100 | $19.90 | 9/29/2015 17:13:31 | ($1,990.00) | |
| | Lightspeed | 1LD40263 | Buy | BPOPN | 700 | $19.90 | 9/29/2015 17:13:31 | ($13,930.00) | |
| 24 | Lightspeed | 1LD40263 | Sell Short | VSEC | 100 | $44.45 | 10/2/2015 18:19:49 | $4,445.00 | $2,796.00 |
| | Lightspeed | 1LD40263 | Sell Short | VSEC | 500 | $44.45 | 10/2/2015 18:19:49 | $22,225.00 | |
| | Lightspeed | 1LD40263 | Buy | VSEC | 100 | $39.79 | 10/2/2015 18:20:11 | ($3,979.00) | |
| | Lightspeed | 1LD40263 | Buy | VSEC | 500 | $39.79 | 10/2/2015 18:20:11 | ($19,895.00) | |
| | Lightspeed | 1LD40263 | Sell Short | HCOM | 100 | $23.85 | 10/6/2015 19:14:46 | $2,385.00 | |

**EXHIBIT 1**

List of Willner's Apparently Fraudulent Trades

| # | Name | Account | Side | Symbol | Qty | Price | DateTime | Amount | Total |
|---|------|---------|------|--------|-----|-------|----------|--------|-------|
| 25 | Lightspeed | 1LD40263 | Sell Short | HCOM | 700 | $23.85 | 10/6/2015 19:14:46 | $16,695.00 | $1,960.00 |
|  | Lightspeed | 1LD40263 | Buy | HCOM | 100 | $21.40 | 10/6/2015 19:15:23 | ($2,140.00) |  |
|  | Lightspeed | 1LD40263 | Buy | HCOM | 700 | $21.40 | 10/6/2015 19:15:23 | ($14,980.00) |  |
| 26 | Lightspeed | 1LD40263 | Sell Short | FLIC | 100 | $30.56 | 10/8/2015 19:19:16 | $3,056.00 | $1,191.40 |
|  | Lightspeed | 1LD40263 | Sell Short | FLIC | 270 | $30.56 | 10/8/2015 19:19:16 | $8,251.20 |  |
|  | Lightspeed | 1LD40263 | Buy | FLIC | 100 | $27.34 | 10/8/2015 19:20:02 | ($2,734.00) |  |
|  | Lightspeed | 1LD40263 | Buy | FLIC | 270 | $27.34 | 10/8/2015 19:20:02 | ($7,381.80) |  |
| 27 | Lightspeed | 1LD40263 | Sell Short | SASR | 100 | $29.88 | 10/9/2015 19:10:54 | $ 2,988.00 | $2,641.00 |
|  | Lightspeed | 1LD40263 | Sell Short | SASR | 800 | $29.88 | 10/9/2015 19:10:54 | $ 23,904.00 |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $26.92 | 10/12/2015 10:42:09 | $ (2,692.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $26.92 | 10/12/2015 10:42:11 | $ (2,692.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $26.89 | 10/12/2015 10:43:12 | $ (2,689.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $26.92 | 10/12/2015 10:43:18 | $ (2,692.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $26.92 | 10/12/2015 10:43:18 | $ (2,692.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $27.02 | 10/12/2015 10:54:33 | $ (2,702.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $26.90 | 10/12/2015 10:59:02 | $ (2,690.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 100 | $27.01 | 10/12/2015 11:58:41 | $ (2,701.00) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 97 | $27.01 | 10/12/2015 12:33:56 | $ (2,619.97) |  |
|  | Lightspeed | 1LD40263 | Buy | SASR | 3 | $27.01 | 10/12/2015 12:33:56 | $ (81.03) |  |
| 28 | Lightspeed | 1LD40263 | Sell Short | RUSHB | 100 | $27.73 | 10/20/2015 19:23:08 | $2,773.00 | $2,142.00 |
|  | Lightspeed | 1LD40263 | Sell Short | RUSHB | 600 | $27.73 | 10/20/2015 19:23:08 | $16,638.00 |  |
|  | Lightspeed | 1LD40263 | Buy | RUSHB | 100 | $24.67 | 10/20/2015 19:25:13 | ($2,467.00) |  |
|  | Lightspeed | 1LD40263 | Buy | RUSHB | 600 | $24.67 | 10/20/2015 19:25:13 | ($14,802.00) |  |
| 29 | Lightspeed | 1LD40263 | Sell Short | REIS | 100 | $27.48 | 10/20/2015 19:26:28 | $2,748.00 | $2,817.00 |
|  | Lightspeed | 1LD40263 | Sell Short | REIS | 800 | $27.48 | 10/20/2015 19:26:28 | $21,984.00 |  |
|  | Lightspeed | 1LD40263 | Buy | REIS | 100 | $24.35 | 10/20/2015 19:27:02 | ($2,435.00) |  |
|  | Lightspeed | 1LD40263 | Buy | REIS | 800 | $24.35 | 10/20/2015 19:27:02 | ($19,480.00) |  |
|  | Lightspeed | 1LD40263 | Sell Short | SENEA | 100 | $32.34 | 10/20/2015 19:31:48 | $3,234.00 |  |
|  | Lightspeed | 1LD40263 | Sell Short | SENEA | 600 | $32.34 | 10/20/2015 19:31:48 | $19,404.00 |  |

**EXHIBIT 1**

List of Willner's Apparently Fraudulent Trades

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 30 | Lightspeed | 1LD40263 | Buy | SENEA | 100 | $28.98 | 10/20/2015 19:32:18 | ($2,898.00) | $2,352.00 |
| | Lightspeed | 1LD40263 | Buy | SENEA | 97 | $28.98 | 10/20/2015 19:32:18 | ($2,811.06) | |
| | Lightspeed | 1LD40263 | Buy | SENEA | 100 | $28.98 | 10/20/2015 19:32:58 | ($2,898.00) | |
| | Lightspeed | 1LD40263 | Buy | SENEA | 403 | $28.98 | 10/20/2015 19:32:58 | ($11,678.94) | |
| 31 | Lightspeed | 1LD40263 | Sell Short | JOUT | 100 | $24.43 | 10/30/2015 17:44:46 | $2,443.00 | $1,740.00 |
| | Lightspeed | 1LD40263 | Sell Short | JOUT | 500 | $24.43 | 10/30/2015 17:44:46 | $12,215.00 | |
| | Lightspeed | 1LD40263 | Buy | JOUT | 100 | $21.53 | 10/30/2015 17:45:16 | ($2,153.00) | |
| | Lightspeed | 1LD40263 | Buy | JOUT | 500 | $21.53 | 10/30/2015 17:45:16 | ($10,765.00) | |
| 32 | Lightspeed | 1LD40263 | Sell Short | MAYS | 100 | $63.55 | 10/30/2015 17:51:11 | $6,355.00 | $1,540.00 |
| | Lightspeed | 1LD40263 | Sell Short | MAYS | 100 | $63.55 | 10/30/2015 17:51:11 | $6,355.00 | |
| | Lightspeed | 1LD40263 | Buy | MAYS | 100 | $55.85 | 10/30/2015 17:51:44 | ($5,585.00) | |
| | Lightspeed | 1LD40263 | Buy | MAYS | 100 | $55.85 | 10/30/2015 17:51:44 | ($5,585.00) | |
| 33 | Lightspeed | 1LD40263 | Sell Short | OFLX | 100 | $46.99 | 10/30/2015 18:01:21 | $4,699.00 | $1,272.00 |
| | Lightspeed | 1LD40263 | Sell Short | OFLX | 140 | $46.99 | 10/30/2015 18:01:21 | $6,578.60 | |
| | Lightspeed | 1LD40263 | Buy | OFLX | 100 | $41.69 | 10/30/2015 18:02:12 | ($4,169.00) | |
| | Lightspeed | 1LD40263 | Buy | OFLX | 140 | $41.69 | 10/30/2015 18:02:12 | ($5,836.60) | |
| 34 | Lightspeed | 1LD40263 | Sell Short | EARS | 9,000 | $3.89 | 5/12/2016 8:12:31 | $35,010.00 | $6,210.00 |
| | Lightspeed | 1LD40263 | Buy | EARS | 9,000 | $3.20 | 5/12/2016 8:15:09 | -$28,800.00 | |
| 35 | Lightspeed | 1LD40263 | Sell Short | CAC | 900 | $47.98 | 5/31/2016 17:11:56 | $43,182.00 | $5,148.00 |
| | Lightspeed | 1LD40263 | Sell Short | CAC | 200 | $47.98 | 5/31/2016 17:11:56 | $9,596.00 | |
| | Lightspeed | 1LD40263 | Buy | CAC | 100 | $43.30 | 5/31/2016 17:12:22 | ($4,330.00) | |
| | Lightspeed | 1LD40263 | Buy | CAC | 1,000 | $43.30 | 5/31/2016 17:12:22 | ($43,300.00) | |
| 36 | Lightspeed | 1LD40263 | Sell Short | PKE | 200 | $18.32 | 5/31/2016 17:29:10 | $3,664.00 | $2,790.00 |
| | Lightspeed | 1LD40263 | Sell Short | PKE | 1,350 | $18.32 | 5/31/2016 17:29:10 | $24,732.00 | |
| | Lightspeed | 1LD40263 | Buy | PKE | 1,450 | $16.52 | 5/31/2016 17:29:45 | ($23,954.00) | |
| | Lightspeed | 1LD40263 | Buy | PKE | 100 | $16.52 | 5/31/2016 17:29:45 | ($1,652.00) | |
| 37 | Lightspeed | 1LD40263 | Sell Short | AQMS | 100 | $13.31 | 6/6/2016 17:14:53 | $1,331.00 | $2,210.00 |
| | Lightspeed | 1LD40263 | Sell Short | AQMS | 1,200 | $13.31 | 6/6/2016 17:14:53 | $15,972.00 | |
| | Lightspeed | 1LD40263 | Buy | AQMS | 100 | $11.61 | 6/6/2016 17:15:53 | ($1,161.00) | |
| | Lightspeed | 1LD40263 | Buy | AQMS | 1,200 | $11.61 | 6/6/2016 17:15:53 | ($13,932.00) | |

## EXHIBIT 1

### List of Willner's Apparently Fraudulent Trades

| # | Firm | Account | Side | Symbol | Qty | Price | Date/Time | Amount | Total |
|---|------|---------|------|--------|-----|-------|-----------|--------|-------|
| 38 | Lightspeed | 1LD40263 | Sell Short | CHA | 100 | $53.72 | 6/6/2016 17:43:06 | $5,372.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CHA | 300 | $53.72 | 6/6/2016 17:43:06 | $16,116.00 | $2,800.00 |
| | Lightspeed | 1LD40263 | Buy | CHA | 100 | $46.72 | 6/6/2016 17:44:00 | ($4,672.00) | |
| | Lightspeed | 1LD40263 | Buy | CHA | 300 | $46.72 | 6/6/2016 17:44:00 | ($14,016.00) | |
| 39 | Lightspeed | 1LD40263 | Sell Short | NWHM | 100 | $11.63 | 6/6/2016 18:03:31 | $1,163.00 | |
| | Lightspeed | 1LD40263 | Sell Short | NWHM | 1,300 | $11.63 | 6/6/2016 18:03:31 | $15,119.00 | $2,086.00 |
| | Lightspeed | 1LD40263 | Buy | NWHM | 100 | $10.14 | 6/6/2016 18:04:12 | ($1,014.00) | |
| | Lightspeed | 1LD40263 | Buy | NWHM | 1,300 | $10.14 | 6/6/2016 18:04:12 | ($13,182.00) | |
| 40 | Lightspeed | 1LD40263 | Sell Short | VICR | 1,050 | $12.32 | 6/8/2016 8:49:49 | $12,936.00 | |
| | Lightspeed | 1LD40263 | Sell Short | VICR | 100 | $12.32 | 6/8/2016 8:49:49 | $1,232.00 | $1,863.00 |
| | Lightspeed | 1LD40263 | Buy | VICR | 1,150 | $10.70 | 6/8/2016 8:51:02 | ($12,305.00) | |
| 41 | Lightspeed | 1LD40263 | Sell Short | VSAR | 100 | $12.34 | 6/9/2016 8:39:38 | $1,234.00 | |
| | Lightspeed | 1LD40263 | Sell Short | VSAR | 2,200 | $12.34 | 6/9/2016 8:39:38 | $27,148.00 | $3,256.00 |
| | Lightspeed | 1LD40263 | Buy | VSAR | 100 | $11.59 | 6/9/2016 8:41:11 | ($1,159.00) | |
| | Lightspeed | 1LD40263 | Sell Short | VSAR | 100 | $10.80 | 6/9/2016 8:42:33 | $1,080.00 | |
| | Lightspeed | 1LD40263 | Buy | VSAR | 2,300 | $10.89 | 6/9/2016 8:43:18 | ($25,047.00) | |
| 42 | Lightspeed | 1LD40263 | Sell Short | CBZ | 100 | $11.81 | 6/13/2016 8:42:53 | $1,181.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CBZ | 2,643 | $11.81 | 6/13/2016 8:42:53 | $31,213.83 | |
| | Lightspeed | 1LD40263 | Sell Short | CBZ | 100 | $11.81 | 6/13/2016 8:43:24 | $1,181.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CBZ | 700 | $11.81 | 6/13/2016 8:43:24 | $8,267.00 | |
| | Lightspeed | 1LD40263 | Sell Short | CBZ | 100 | $10.62 | 6/13/2016 8:44:29 | $1,062.00 | $4,187.03 |
| | Lightspeed | 1LD40263 | Buy | CBZ | 100 | $10.63 | 6/13/2016 8:44:57 | ($1,063.00) | |
| | Lightspeed | 1LD40263 | Buy | CBZ | 3,300 | $10.63 | 6/13/2016 8:44:57 | ($35,079.00) | |
| | Lightspeed | 1LD40263 | Buy | CBZ | 100 | $10.60 | 6/13/2016 8:48:32 | ($1,060.00) | |
| | Lightspeed | 1LD40263 | Buy | CBZ | 143 | $10.60 | 6/13/2016 8:48:32 | ($1,515.80) | |
| 43 | Lightspeed | 1LD40263 | Sell Short | DEG | 2,400 | $28.84 | 6/13/2016 18:38:06 | $69,216.00 | |
| | Lightspeed | 1LD40263 | Sell Short | DEG | 100 | $28.84 | 6/13/2016 18:38:06 | $2,884.00 | $7,475.00 |
| | Lightspeed | 1LD40263 | Buy | DEG | 2,500 | $25.85 | 6/13/2016 18:39:32 | ($64,625.00) | |
| 44 | Lightspeed | 1LD40263 | Sell Short | MRC | 1,450 | $15.91 | 7/1/2016 7:56:30 | $23,069.50 | $2,465.00 |
| | Lightspeed | 1LD40263 | Buy | MRC | 1,450 | $14.21 | 7/1/2016 7:57:52 | ($20,604.50) | |

# EXHIBIT 1

## List of Willner's Apparently Fraudulent Trades

| # | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 45 | Lightspeed | 1LD40263 | Sell Short | NYT | 4,500 | $13.36 | 7/5/2016 7:14:56 | $60,120.00 | | $8,124.00 |
| | Lightspeed | 1LD40263 | Sell Short | NYT | 100 | $12.10 | 7/5/2016 7:18:08 | $1,210.00 | | |
| | Lightspeed | 1LD40263 | Sell Short | NYT | 100 | $11.99 | 7/5/2016 7:20:09 | $1,199.00 | | |
| | Lightspeed | 1LD40263 | Buy | NYT | 100 | $12.09 | 7/5/2016 7:20:34 | ($1,209.00) | | |
| | Lightspeed | 1LD40263 | Buy | NYT | 3,500 | $12.09 | 7/5/2016 7:20:57 | ($42,315.00) | | |
| | Lightspeed | 1LD40263 | Buy | NYT | 900 | $12.09 | 7/5/2016 7:21:46 | ($10,881.00) | | |
| | Lightspeed | 1LD40263 | Buy | NYT | 100 | $12.09 | 7/5/2016 7:22:05 | ($1,209.00) | | |
| | Lightspeed | 1LD40263 | Buy | NYT | 100 | $12.09 | 7/5/2016 7:25:27 | $1,209.00 | | |
| 46 | Lightspeed | 1LD40263 | Sell Short | MOH | 1,250 | $54.99 | 7/5/2016 7:37:08 | $68,737.50 | | $6,750.00 |
| | Lightspeed | 1LD40263 | Sell Short | MOH | 75 | $49.59 | 7/5/2016 7:39:02 | $3,719.25 | | |
| | Lightspeed | 1LD40263 | Buy | MOH | 1,000 | $49.59 | 7/5/2016 7:40:02 | ($49,590.00) | | |
| | Lightspeed | 1LD40263 | Buy | MOH | 325 | $49.59 | 7/5/2016 7:40:41 | ($16,116.75) | | |
| 47 | Lightspeed | 1LD40263 | Sell Short | CLI | 3,000 | $29.75 | 7/5/2016 7:44:17 | $89,250.00 | | $7,981.05 |
| | Lightspeed | 1LD40263 | Sell Short | CLI | 100 | $27.06 | 7/5/2016 7:44:35 | $2,706.00 | | |
| | Lightspeed | 1LD40263 | Buy | CLI | 3,000 | $27.09 | 7/5/2016 7:45:19 | ($81,270.00) | | |
| | Lightspeed | 1LD40263 | Buy | CLI | 10 | $27.05 | 7/5/2016 9:32:15 | ($270.50) | | |
| | Lightspeed | 1LD40263 | Buy | CLI | 90 | $27.05 | 7/5/2016 9:32:21 | ($2,434.46) | | |
| 48 | Lightspeed | 1LD40263 | Sell Short | OIS | 1,900 | $34.21 | 7/6/2016 8:14:44 | $64,999.00 | | $6,282.00 |
| | Lightspeed | 1LD40263 | Sell Short | OIS | 100 | $30.83 | 7/6/2016 8:16:09 | $3,083.00 | | |
| | Lightspeed | 1LD40263 | Buy | OIS | 1,900 | $30.90 | 7/6/2016 8:16:41 | ($58,710.00) | | |
| | Lightspeed | 1LD40263 | Buy | OIS | 100 | $30.90 | 7/6/2016 8:20:07 | ($3,090.00) | | |
| 49 | Lightspeed | 1LD40263 | Sell Short | EIG | 1,400 | $31.97 | 7/6/2016 19:02:58 | $44,758.00 | | $3,990.00 |
| | Lightspeed | 1LD40263 | Buy | EIG | 1,400 | $29.12 | 7/6/2016 19:04:11 | ($40,768.00) | | |
| 50 | Lightspeed | 1LD40263 | Sell Short | FII | 1,100 | $31.14 | 7/7/2016 7:48:01 | $34,254.00 | | $3,046.00 |
| | Lightspeed | 1LD40263 | Sell Short | FII | 100 | $28.36 | 7/7/2016 7:48:13 | $2,836.00 | | |
| | Lightspeed | 1LD40263 | Buy | FII | 1,200 | $28.37 | 7/7/2016 7:49:13 | ($34,044.00) | | |